UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY REED,<br>TDCJ No. 999271,<br><br>　　　　　Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>　　　　　Respondent. | §§§§§§§§§§§§§ | Civil No. 1:02-cv-0142-RP<br><br>* DEATH PENALTY CASE * |

# ORDER

Petitioner Rodney Reed was convicted and sentenced to death in May 1998. Reed's conviction and sentence were affirmed on direct appeal, and his numerous efforts to obtain habeas corpus relief—both state and federal—have been unsuccessful. Now, citing alleged misconduct by the State both before and during his federal habeas proceedings, Reed asks this Court to reopen his federal proceedings, vacate the Court's September 2012 Order denying relief (ECF No. 177), and consider anew his request for habeas relief. He also seeks discovery to support his motion. Respondent Bobby Lumpkin opposes both of these requests.

Currently pending before the Court are Reed's Motion for Relief from Judgment (ECF No. 208) and Motion for Discovery (ECF No. 209), Respondent's Opposition to both motions (ECF No. 224), and Reed's Reply (ECF No. 229) thereto. After carefully considering the pleadings and relief sought by Reed, the Court concludes that the motion for relief from judgment is actually a successive petition which this Court is prohibited from considering. The motion is therefore dismissed for lack of jurisdiction. For the same reason, Reed's discovery request is also dismissed.

I. <u>Background</u>

A.   **State Court**

Reed was convicted by a Bastrop County jury in May 1998 and sentenced to death for the 1996 abduction, rape, and murder of Stacey Lee Stites. The Texas Court of Criminal Appeals (TCCA) affirmed his conviction and sentence on direct appeal, and certiorari was denied by the United States Supreme Court. *Reed v. State*, No. AP-73,135 (Tex. Crim. App. Dec. 6, 2000) (unpublished), *cert. denied*, 534 U.S. 955 (2001).

Since then, Reed has repeatedly challenged the constitutionality of his conviction and sentence in state court, having filed eleven state habeas corpus applications raising numerous allegations for relief. Each of these applications invariably included claims that newly discovered evidence supported his assertion that he is actually innocent of Stites' murder[1] and that the State's failure to disclose this evidence violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Ex parte Reed*, 670 S.W.3d 689, 710-32 (Tex. Crim. App. 2023) (explaining, in detail, the claims and procedural history regarding Reed's first ten habeas applications). On these issues alone, Reed has, over a lengthy period of time, provided the state courts with a variety of evidence to support his allegations and has received no less than four evidentiary hearings on the matters. To date, each of these applications has either been dismissed or denied, with neither the trial court nor the TCCA ever seriously questioning the integrity of his conviction. *Id.*; *see, e.g., Ex parte Reed*, Nos. WR-50,961-08 to -09, 2019 WL 2607452, at *1-3 (Tex. Crim. App. June 26, 2019).

---

[1]   Reed's actual innocence claims generally mimicked his trial strategy by attempting to show that (1) his DNA was found on Stites' body because he and Stites were in a consensual sexual relationship in the months leading up to Stites' death, and (2) someone else, most likely Stites' jealous fiancé, Jimmy Fennell, murdered Stites.

B. **Federal Court**

Reed also challenged the constitutionality of his conviction and sentence in federal court, having sought habeas corpus relief from this Court under 28 U.S.C. § 2254 in February 2013 following the TCCA's rejection of his first and second state habeas applications. (ECF No. 33). After permitting limited discovery and depositions, the Court initially stayed Reed's federal proceedings to allow him to return to state court to exhaust certain claims that had not been presented to the state court in his previous state habeas proceedings. (ECF Nos. 59, 114).

Upon his return to federal court some six years later, Reed filed an amended petition raising, among other claims, a freestanding claim of actual innocence and a gateway claim of actual innocence to help overcome the procedural default of certain allegations. (ECF No. 137). The State moved for summary judgment, and on June 15, 2012, the magistrate judge issued a comprehensive report and recommendation listing each of Reed's allegations and recommending their denial. (ECF Nos. 150, 161). A few months later, the Court, the Honorable Judge Lee Yeakel presiding, issued a lengthy Order largely adopting the magistrate judge's recommendations and, relative to Reed's claims of actual innocence, finding there was no credible evidence to support the conclusions that Reed had a consensual relationship with Stites or that someone other than Reed murdered her. (ECF No. 177). This decision was affirmed by the Fifth Circuit Court of Appeals in January 2014. *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014), *cert. denied*, 574 U.S. 973 (2014).

C. **Recent Developments**

In November 2019, Reed filed his tenth state habeas application alleging, among other things, (1) a *Brady* violation, (2) that several witnesses testified falsely at trial, and (3) new evidence establishes his innocence. *Ex parte Reed*, No. WR-50,961-10 (Tex. Crim. App. Nov. 15,

3

2019) (not designated for publication). The TCCA remanded the case to the trial court for further factual development, where the case remained for several months. On July 6, 2021, two weeks before the scheduled evidentiary hearing, the trial court held a status hearing where counsel for Reed accused the State of additional *Brady* violations. *Ex parte Reed*, 670 S.W.3d at 731. Counsel explained that, on June 25, 2021, they had received two letters from one of the State's habeas attorneys, Matthew Ottoway. *Id*. As the TCCA later explained:

> In the first letter, Ottoway stated that he had recently discovered certain "witness interview summaries . . . created by the trial prosecution team in preparation for the underlying 1998 criminal prosecution." Ottoway did not divulge who prepared these summaries, but he outlined their contents as follows:
>
> > • "[H-E-B store manager] Ron Haas stated that he had heard rumors at HEB that [Reed] knew Stacey Stites and would sometimes visit her at HEB. Mr. Haas said that Andrew Cardenas might have mentioned that [Reed] and Stacey Stites were acquaintances."
> >
> > • "[H-E-B employee] Andrew Cardenas stated that Jose Coronado said he saw [Reed] speaking with Stacey Stites at HEB and got the impression from Jose that [Reed] and Stacey Stites knew each other. Mr. Cardenas denied seeing [Reed] in the store or speaking with Stacey Stites."
> >
> > • "[H-E-B employee] Jose Coronado denied telling anyone that [Reed] came into HEB and visited with Stacey Stites."
>
> Ottoway attached the witness interview summaries to the letter. The letter ended with a disclaimer: "You are being given this information in an abundance of caution to provide you anything that might conceivably be considered exculpatory or mitigating. The State does not vouch for the veracity of these statements."
>
> In the second letter, Ottoway wrote that, in preparation for the upcoming evidentiary hearing, one of the State's potential habeas witnesses made a statement that "might conceivably be considered exculpatory or mitigating." Specifically:
>
> > Suzan Hugen . . . a former HEB employee, stated that she saw [Reed] and Stacey Stites at the store on one occasion, maybe about a week before Stacey Stites's death. Ms. Hugen said that Stacey Stites introduced [Reed] to her as a good or close friend and that they appeared friendly, giggling, and flirting. Ms. Hugen said that [Reed] was with another man who was friends with the son of a woman who worked in the photo lab and that [Reed] was friends

>with this woman's son as well.  Ms. Hugen also believed that Stacey Stites would not have locked her seatbelt in the way it was found. She believes that she told this information to a man working security named "Paul," who was short, skinny, wore glasses, had salt-and-pepper hair, and may have worked for a police department.  It was possibly [Bastrop police officer] Paul Alexander, but Ms. Hugen was not sure.

>This second letter ended with the same disclaimer as the first.

*Id*. at 731-32.

Reed asked the trial court to (1) order the State to identify which member of the prosecution team prepared the witness interview summaries, (2) order further discovery, and (3) add a new *Brady* allegation based on this newly discovered evidence to the scope of the upcoming evidentiary hearing.  The trial court granted Reed's first request but denied the rest.  *Id*. at 732.  A few weeks later, the trial court held a 10-day evidentiary hearing where it heard testimony from 47 witnesses. *Id*. at 735-43.  The trial court later signed the State's proposed findings of fact and conclusions of law recommending the denial of relief on all of the remanded claims.  *Id*. at 743.  In June 2023, the TCCA issued a lengthy opinion where the court independently reviewed the record and concluded that Reed failed to demonstrate his innocence of Stites' murder or that the State withheld material *Brady* evidence prior to Reed's trial.  *Id*. at 744, 769.

While his tenth state habeas application was still pending, Reed filed an eleventh application alleging three more claims: (1) the State failed to disclose material evidence, including Hugen's 2021 witness statement and the pretrial witness summaries pertaining to Haas, Cardenas, and Coronado, (2) the State elicited false or misleading lay testimony at trial, and (3) the State elicited false or misleading expert testimony concerning, in part, the length of time spermatozoa remains intact.  *Ex parte Reed*, No. WR-50,961-11, 2023 WL 4234348, at *3-4 (Tex. Crim. App. June 28, 2023).  After considering the allegations in their totality, the TCCA concluded that Reed has not made a *prima facie* showing that he suffered a *Brady* violation or that the State presented

5

false testimony at his trial.[2]  *Id*. at *4-8.  The court therefore dismissed Reed's application as an abuse of the writ under Article 11.071, Section 5 of the Texas Code of Criminal Procedure.  *Id*.

Following the TCCA's rejection of his tenth and eleventh state habeas applications, Reed sought a writ of certiorari with the United States Supreme Court.  *Reed v. Texas*, No. 23-569 (2023).  His request was denied in July 2024.  *Reed v. Texas*, 144 S. Ct. 2716 (2024).

## II. Reed's Rule 60 Motion

In his Rule 60 motion, Reed contends his federal habeas proceedings should be reopened to cure a "defect" that occurred in the prior proceedings—namely, the State's pattern of misconduct that denied him the right to a full and fair adjudication of his habeas petition.  (ECF No. 208).  According to Reed, he was deprived of this right by the State's (1) suppression of exculpatory evidence of a relationship between Reed and Stites that was later disclosed by the State prior to the 2021 state evidentiary hearing, (2) misrepresentations to the Court that no "credible evidence" of such a relationship existed, (3) failure to turn over the missing evidence pursuant to the Court's discovery Order (ECF No. 59), and (4) continued reliance on false forensic testimony that was presented at trial.  Reed argues that the State's egregious misconduct constituted both a "fraud on the Court" and an "extraordinary circumstance" under Federal Rules of Civil Procedure 60(d)(3) and 60(b)(6) because it prevented him from obtaining a fair or reliable adjudication of his claim that he was actually innocent of Stites' murder.  As a result, Reed asks to be restored to the position he was in before the State engaged in misconduct by vacating the Court's previous judgment and reopening Reed's federal habeas proceedings.

---

[2]   Specifically, the court found that "the bulk of the information that Reed characterizes as *Brady* evidence cannot be said to be material.  Given its limited probativity, the fact that much of it was based on hearsay and/or rumor, and its overlap with evidence that the jury already heard at trial, there is not a reasonable probability that its pretrial disclosure would have led to a different outcome at trial."  *Id*. at *6.

6

Respondent opposes Reed's Rule 60 motion. (ECF No. 224). Respondent argues that the motion should be dismissed "because it is simply a successive petition in disguise over which the Court lacks jurisdiction." *Id*. at 2, 12-16. Alternatively, Respondent contends that Reed's motion fails to demonstrate either fraud on the Court or extraordinary circumstances in order to warrant Rule 60 relief. Finally, Respondent contends that Reed is not entitled to discovery for the same reasons.

### III. Analysis

**A.   Rule 60 Standard**

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes strict limitations on the filing of successive habeas petitions. 28 U.S.C. § 2244(b). Given this difficulty, state prisoners occasionally "use Rule 60(b) motions to evade the AEDPA's limitations on successive habeas petitions." *Jackson v. Lumpkin*, 25 F.4th 339, 340 (5th Cir. 2022). Thus, when a petitioner files a Rule 60 motion following the denial of an application for habeas relief, the district court must first determine whether he is only seeking Rule 60 relief or is attempting to file a second or successive habeas petition. *See Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005); *Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019); *see also Preyor v. Davis*, 704 F. App'x 331, 338-40 (5th Cir. 2017) (unpublished) (applying *Gonzalez* to motion seeking to reopen federal habeas proceedings under both Rule 60(d)(3) and 60(b)(6)).

Under *Gonzalez*, a district court has jurisdiction to consider a Rule 60 motion in habeas proceedings so long as the motion "attacks, not the substance of the federal court's resolution of the claim on the merits, but some defect in the integrity of the federal habeas proceedings." 545 U.S. at 532; *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010). A procedural defect includes fraud on the habeas court, as well as previous rulings which precluded a merits determination—

7

for example, "a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014) (citing *Gonzalez*, 545 U.S. at 532 n.4). Because such procedural defects are "narrowly construed," however, they are extraordinarily difficult to establish. *Id*.

In contrast, a motion that seeks to add a new ground for relief or attack the previous resolution of a claim on the merits is, in fact, a successive petition subject to the standards of 28 U.S.C. § 2244(b). *Gonzalez*, 545 U.S. at 531-32; *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013). Motions presenting new evidence in support of a claim already litigated or asserting a change in the substantive law governing the claim are also subsequent petitions. *Gonzalez*, 545 U.S. at 532; *Ruiz v. Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007). Stated another way, motions that "in effect ask for a second chance to have the merits determined favorably" must be construed as successive habeas petitions regardless of whether they are characterized as procedural attacks. *United States v. Vialva*, 904 F.3d 356, 360 (5th Cir. 2018) (per curiam) (quoting *Balentine*, 626 F.3d at 847).

B.     **Reed's Motion Is a Successive Habeas Petition**

Reed argues his request for Rule 60 relief is not a successive habeas petition because it is solely an attack on a defect in his prior habeas proceedings. To do so, he relies on a "fraud on the court" theory. Reed contends that the State perpetrated a fraud by deceiving the Court in multiple ways during the underlying habeas proceedings—specifically, by "making explicit and knowing misrepresentations about what evidence existed (and was even in its possession), disregarding a judicial order to disclose that evidence, and relying on false scientific evidence." (ECF No. 229 at 4-5). According to Reed, the State's ongoing misconduct "impaired the Court's ability to consider and fairly adjudicate his petition." *Id*. at 4.

8

The Court disagrees that the State's conduct prior to and during the underlying proceeding constituted fraud, much less a "defect" in the proceeding that warrants relief under Rule 60. To start, fraud on the federal court is a very difficult standard to meet. It is a "narrow concept" and "should embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner[.]" *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d. 869, 872 (5th Cir. 1989).

Generally, a petitioner must "show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion." *Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999) (citing *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996)). As such, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court." *Id.*; *see also Jackson v. Thaler,* 348 F. App'x 29, 34 (5th Cir. 2009) (unpublished) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). Conversely, less egregious misconduct, such as nondisclosure, generally will not suffice. *Id.*

Here, Reed makes no allegation that fits within the "narrow concept" of fraud on the court. There has been no showing of any attempt to "defile" this Court or prevent the Court from performing "in the usual manner," as the lengthy procedural history from the magistrate judge will attest. *Wilson*, 873 F.2d. at 872. Reed also does not demonstrate egregious misconduct that rises to the level of bribery or fabrication of evidence. Instead, the gist of Reed's fraud allegation is that the State failed to turn over the witness summaries described in Section I(C) until June 2021, allegedly in violation of *Brady* and this Court's discovery order. Yet even assuming the statements constitute *Brady* material, the State's failure to disclose such pertinent facts does not rise to the level of fraud on the court. *See Lustig*, 96 F.3d at 1573 (finding "[l]ess egregious misconduct,

9

such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court."). Because the State's nondisclosure does not rise to the level of "an unconscionable plan or scheme . . . designed to improperly influence the court in its decision," Reed fails to establish that a "defect" occurred in the prior proceedings.  *Fierro*, 197 F.3d at 154.

Further, the argument that a fraud was committed on this Court because the State failed to disclose *Brady* evidence that was in its possession—i.e., the pretrial witness summaries pertaining to Haas, Cardenas, and Coronado—and then lied about it assumes that this evidence was indeed *Brady* material.  Reed contends that these statements support his claims of innocence because they demonstrate that he and Stites were secretly dating at the time of the murder.  But as the state habeas court found, each of these statements "were built on rumor and hearsay, and when investigated, they ultimately led nowhere." *Ex parte Reed*, 2023 WL 4234348, at *5. None of the witnesses ever stated they saw Reed and Stites together, much less provided tangible evidence of a secret affair between the two.  As such, contrary to Reed's assertion, the State hardly committed fraud by repeatedly asserting that no credible evidence of a relationship between Reed and Stites existed.[3]

Finally, Reed purportedly does not seek to advance new claims nor attack this Court's substantive ruling on existing claims, but rather only wishes to challenge the defect created by the State's alleged misconduct which deprived this Court of the ability to fully and fairly adjudicate his claims of innocence.  (ECF No. 208 at 53-54).  But such a statement is misleading.  Although

---

[3] Reed also cites the witness statement of Suzan Hugen as proof that the State had credible evidence of a relationship between Stites and Reed in its possession during the underlying proceedings but failed to disclose it. (ECF No. 208 at 38).  But the summary in question was first generated in preparation for the evidentiary hearing that took place in state court in 2021, over a decade *after* the State filed its Answer in this case. *Ex parte Reed*, 670 S.W.3d at 732; (ECF No. 150).  Thus, Hugen's statement clearly does not support Reed's fraud allegation either.

10

Reed ostensibly seeks only to remedy a defect, he seeks to do so by presenting evidence recently discovered prior to or during his latest state habeas evidentiary hearing. This includes new evidence that he and Stites were secretly dating at the time of the murder (Hugen's state habeas testimony, along with the pretrial witness summaries regarding Haas, Cardenas, and Coronado), as well as new evidence establishing that the State presented false forensic testimony at trial (expert testimony from the state habeas evidentiary hearing demonstrating the falsity of expert trial testimony concerning the length of time spermatozoa remains intact).

Because Reed's Rule 60 motion essentially seeks to present new evidence in support of his actual innocence claims, it is a subsequent petition. *Gonzalez*, 545 U.S. at 531-32; *Ruiz*, 504 F.3d at 526. Indeed, it appears Reed's motion is simply a means to re-open the proceedings for the ultimate purpose of resurrecting and supplementing an actual innocence claim this Court has already adjudicated. That is the very definition of a successive petition. *See In re Edwards,* 865 F.3d 197, 204-05 (5th Cir. 2017) (finding attempt to bring new claims under the guise of "defects in the integrity of the original habeas proceedings" to be successive). As Reed's alleged procedural defects are simply an attempt to circumvent 28 U.S.C. § 2244(b), his motion must be dismissed as successive.

C.      **Federal Limitations on Second or Successive Petitions**

A district court lacks jurisdiction to consider a "second or successive" habeas petition in the first instance. 28 U.S.C. § 2244(b). The AEDPA established a pre-authorization procedure in which a habeas litigant must first seek approval from a three-judge panel of the circuit court. *Id*. Without such authorization, the otherwise-cognizant district court has no jurisdiction to entertain a successive § 2254 petition. *Leal Garcia v. Quarterman*, 573 F.3d 214, 219 (5th Cir. 2009) (citations omitted).

Reed has already filed one petition challenging his capital conviction and death sentence, and as discussed above, his recent Rule 60 motion falls within the AEDPA's prohibition on second or successive petitions. Thus, under the AEDPA, the Fifth Circuit must consider Reed's motion in the first instance.

## IV. Discovery

Reed also asks this Court to authorize "narrowly tailored" discovery to help bolster the allegations raised in his Rule 60 motion. (ECF No. 209 at 1). Specifically, Reed requests the following items from the Bastrop County District Attorney's Office, the Office of the Attorney General of Texas, the Texas Department of Public Safety, the Bastrop Police Department, the Bastrop Sheriff's Office, and the Giddings Police Department:

(1) Production of: (a) all exculpatory information in their possession, including but not limited to evidence that Reed and Stites were in a consensual relationship, evidence that supports the theory that Fennell was the actual perpetrator of the crime, and information pertaining to the use of false forensic testimony at trial, (b) the investigation files and notes related to Stites' murder and Reed's conviction, including all notes, summaries, statements, videotapes, and audio tapes of the interrogation and/or interview of any witness or suspect before or after Reed's trial, (c) the actual statements made to law enforcement by Suzan Hugen, Andrew Cardenas, and Richard Haas before Reed's trial, (d) a copy of each entity's open file policy from 1997 to present, and (e) a privilege log from each entity should they withhold any information based on a claim of privilege;

(2) An *in camera* review conducted by the Court of all files and notes related to Stites' murder and Reed's trial in the possession of each entity to verify their compliance with the discovery order; and

(3) A written, detailed explanation from the State as to why each document produced has not previously been made available to Reed or his counsel.

*Id*. at 10-12.

The law is clear that the broad discovery provisions available to other civil litigants are not extended, as a matter of right, to habeas corpus petitioners. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Reed v. Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007). Under Rule 6(a) of the Rules

Governing Section 2254 Cases, Reed must receive leave of the Court for discovery, which the Court may authorize only "for good cause" and with limits on the extent. The Supreme Court has held that "good cause" is shown where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The Court finds no good cause exists for granting Reed's expansive discovery request. Reed seeks entire investigative files from numerous State agencies dating back over 25 years in order to bolster his argument that State misconduct warrants the reopening of his federal habeas proceedings. Before "facilitating the development of new evidence," however, this Court must first determine that such evidence "could be legally considered in [Reed]'s case." *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (citing *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022)).

As discussed above, Reed has not shown that further factual development is warranted because his Rule 60 motion, with or without any additional supporting evidence, is a successive habeas petition over which this Court lacks jurisdiction. Reed has also not shown that the factual development requested would help him overcome this procedural impediment. *See, e.g., Thompson v. Stephens*, 2014 WL 2765666, at *2 (S.D. Tex. 2014) ("As a threshold matter, however, a court must also take into account the procedural posture of an inmate's claims. A petitioner cannot show good cause if a federal court cannot reach the merits of the disputed claims."). Thus, because Reed's Rule 60 motion is a successive habeas petition over which this Court has no jurisdiction, discovery in that action is inappropriate.

## V. Conclusion

The Court concludes that Petitioner's Rule 60 motion is construed as a successive habeas corpus petition. But Reed has not obtained leave from the Fifth Circuit Court of Appeals to file a

13

successive petition as dictated by 28 U.S.C. § 2244(b)(3)(A). Therefore, this Court lacks jurisdiction to consider the motion. *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) (Section 2244(b)(3)(A) "acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition" until the appellate court has granted permission to file one).

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Reed's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60, filed December 22, 2023 (ECF No. 208), is **DISMISSED** without prejudice for want of jurisdiction;

2. Reed's Motion for Discovery filed the same day (ECF No. 209) is also **DISMISSED** without prejudice;

3. No certificate of appealability shall issue in this case, as reasonable jurists could not debate the denial or dismissal of Reed's motions on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); and

4. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 30th day of September, 2024.**

                              **ROBERT PITMAN**
                              **UNITED STATES DISTRICT JUDGE**